UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TRUSTEES OF THE ROCHESTER
LABORERS' WELFARE-S.U.B. FUND,
ROCHESTER LABORERS' PENSION
FUND, ROCHESTER LABORERS'
ANNUITY FUND, ROCHESTER LABORERS'          **DECISION AND ORDER**
APPRENTICE AND TRAINING FUND,
LABORERS' INTERNATIONAL UNION              6:23-CV-06108 EAW
OF NORTH AMERICA, LOCAL UNION NO. 435,

        Plaintiffs,

    v.

CHARLES SORCE,

        Defendant.
_____

## INTRODUCTION

Plaintiffs Trustees of the Rochester Laborers' Welfare-S.U.B. Fund, Rochester Laborers' Pension Fund, Rochester Laborers' Annuity Fund, Rochester Laborers' Apprentice and Training Fund, and Laborers' International Union of North America, Local Union No. 435 (collectively "Plaintiffs") commenced this action on February 9, 2023, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, alleging that defendant Charles Sorce ("Defendant") breached a collective bargaining agreement (CBA) in which Defendant's LLC was required to make fringe benefit contributions.  (Dkt. 1).  Plaintiffs are suing Defendant in his individual capacity.  (*Id.*).

- 1 -

The Court denied Plaintiffs' first motion for default judgment (Dkt. 7) by Decision and Order dated December 19, 2023 (the "December 2023 Decision and Order") (Dkt. 10), finding that Plaintiffs failed to establish that they have a valid cause of action. Familiarity with the December 2023 Decision and Order is assumed for purposes of this Decision and Order. Currently before the Court is Plaintiffs' second motion for default judgment, filed on February 15, 2024. (Dkt. 12). Plaintiffs served the December 2023 Decision and Order, the instant motion, and the Court's Scheduling Order on Defendant via mail. (Dkt. 11; Dkt. 12 at 19; Dkt. 14). Defendant has not appeared or filed an answer in this action. For the reasons set forth below, Plaintiffs' motion is denied because they still have not satisfied the standard for entry of default judgment.

## FACTUAL BACKGROUND

Plaintiffs commenced this action against Defendant on February 9, 2023, alleging that they are entitled to damages pursuant to 29 U.S.C. §§ 1132(g)(2) and 1145. (Dkt. 1 at ¶ 14). Defendant was personally served on February 20, 2023. (Dkt. 4). Defendant failed to file a responsive pleading, and the Clerk of Court entered a default against Defendant on March 20, 2023. (Dkt. 6).

The following facts are taken from Plaintiffs' complaint and motion papers and are accepted as true in light of Defendant's default. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.,* 699 F.3d 230, 234 (2d Cir. 2012) ("[A] party's

- 2 -

default is deemed to constitute a concession of all well pleaded allegations of liability. . . .").

Plaintiffs are the named trustees of labor-affiliated funds administered in Rochester, New York. (Dkt. 1 at ¶¶ 1-3). A Joint Board of Trustees administers the funds, which were established pursuant to a CBA between Local Union No. 435 ("the union") and "certain [e]mployers and [e]mployer [a]ssociations" that employ union members. (*Id.* at ¶ 6). The funds must be administered consistent with ERISA, the Labor Management Relations Act, and applicable federal and state laws. (*Id.*).

Defendant is the principal owner and officer of Insulation Coatings & Consultants, LLC ("Insulation Coatings" or the "company") and "is responsible for Insulation Coatings' day-to-day operations as well as contribution payments to the funds, including whether to pay contributions." (*Id.* at ¶ 4; Dkt. 12 at 16). Insulation Coatings filed a Chapter 11 bankruptcy petition and is not a party in this action. (Dkt. 1 at ¶ 21; Dkt. 12 at 12; *see also* Dkt. 12-9).

Insulation Coatings was a signatory to a CBA with the union. (Dkt. 1 at ¶ 8; *see also* Dkt. 12-2; Dkt. 12-3). Under the CBA, Insulation Coatings agreed to pay wages and employee fringe benefit contributions to the funds for each employee covered by the agreement. (Dkt. 1 at ¶ 10). The trustees of the funds are authorized to examine and copy the relevant business records of an employer that has signed the agreement to ensure that the employer is making the required contributions for their employees. (*Id.* at ¶ 13).

In July 2021, the funds audited Insulation Coatings for the period between June 1, 2018, and June 30, 2021, and determined that the company was responsible for $55,684.38 in delinquent benefit contributions and deductions allegedly for May through July 2022 and September 2022, interest, and liquidated damages. (Dkt. 12 at 11; *see also* Dkt. 12-5 at 2; Dkt. 12-7 at ¶ 3). Insulation Coatings entered into a payment agreement (the "payment agreement") with Plaintiffs in which it admitted that it owed $55,684.38, as outlined in the audit, and that it would make monthly payments through February 15, 2023, to repay the shortfall. (Dkt. 12 at 11; *see also* Dkt. 12-6 at 2-3). Defendant signed the payment agreement for Insulation Coatings. (Dkt. 12 at 16; *see also* Dkt. 12-6 at 3).

Insulation Coatings allegedly made payments totaling $33,824.88, reducing the audit balance to $21,859.50. (Dkt. 1 at ¶ 20; *see also* Dkt. 12-7 at ¶ 4). Beginning with the July 2022 payment, Insulation Coatings failed to repay the amount due and has not made any payments since then. (Dkt. 12 at 11-12; *see also* Dkt. 12-8).

## DISCUSSION

### I.    Legal Standard

Federal Rule of Civil Procedure 55 sets forth the procedural steps for entry of a default judgment. First, a plaintiff must seek entry of default where a party against whom it seeks affirmative relief has failed to plead or defend in the action. Fed. R. Civ. P. 55(a). As noted above, Plaintiffs obtained an entry of default in this case. (Dkt. 6).

"Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b)." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *see also* Fed. R. Civ. P.

55(b).  "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability. . . ."  *Metro Found. Contrs. Inc.*, 699 F.3d at 234 (quotation omitted); *see also Philip Morris USA Inc. v. 5 Brothers Grocery Corp.*, No. 13-CV-2451 (DLI)(SMG), 2014 WL 3887515, at *2 (E.D.N.Y. Aug. 5, 2014) ("Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability.") (citation omitted).

However, a district court "need not agree that the alleged facts constitute a valid cause of action."  *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quotation omitted).  "It is within the sound discretion of the District Court whether to enter a default judgment pursuant to Rule 55(b)(2), based on the assessment of the circumstances of the case and an evaluation of the parties' credibility and good faith."  *Granite Music Corp. v. Ctr. St. Smoke House, Inc.*, 786 F. Supp. 2d 716, 726 (W.D.N.Y. 2011) (citation omitted).  "[P]rior to entering default judgment, a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.'"  *Truck Ins. Exch. v. Paonessa*, No. 18-CV-578, 2019 WL 451427, at *1 (W.D.N.Y. Feb. 5, 2019) (quoting *Mickalis Pawn Shop,* 645 F.3d at 137).

## II.    Plaintiffs Have Still Not Established Defendant's Personal Liability

Plaintiffs argue that Defendant can be held personally liable for Insulation Coatings' unpaid benefit contributions because contributions are plan assets and Defendant is a fiduciary under ERISA who breached his fiduciary duties by failing to make the contributions.  (Dkt. 12 at 12-17).  As the principal owner and officer of Insulation

Coatings, Plaintiffs allege that Defendant was responsible for its day-to-day operations and "all its decisions pertaining to the payment of contributions to the Funds, including whether to pay contributions." (*Id.* at 16; *see* Dkt. 1 at ¶¶ 4, 24). Plaintiffs also argue that Defendant, by signing the payment agreement, "bound Insulation Coatings and himself to the repayment of delinquent fringe benefits." (*Id.*).

Under ERISA, "[t]o establish the personal liability of a fiduciary, a plaintiff must show 'both that (1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him [or her] a fiduciary.'" *See*, *e.g.*, *Bricklayers Ins. & Welfare Fund v. Alpha Omega Bldg. Corp.*, No. 19-cv-2600 (ERK) (RLM), 2021 WL 3861762, at *3 (E.D.N.Y. Aug. 30, 2021) (quotation omitted). "[M]ultiple New York courts have consistently held that a company's unpaid debt to an ERISA fund constitutes an asset of that fund when the applicable agreement states that such debts are fund assets." *Trs. of Bldg. Trades Educ. Benefit Fund v. Unified Elec.*, No. 23-CV-188 (ARR) (ST), 2024 WL 1349266, at *8 (E.D.N.Y. Mar. 14, 2024) (citing *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) and citation omitted), *adopted*, 2024 WL 1345219 (E.D.N.Y. Mar. 29, 2024). According to the CBA, the trust agreements for the funds at issue are incorporated into the CBA by reference. (*See* Dkt. 12-2 at 27 § 1). Plaintiffs assert that the trust agreements specify that "contributions become vested plan assets when due[,]" and they submitted a one-page excerpt of the trust agreement for the Rochester Laborers' Pension Fund as an example, in support. (Dkt. 12 at 15; Dkt. 12-10;

*see also* Dkt. 1 at ¶ 11).  Pursuant to § 8 of the excerpted trust agreement, "[t]itle to all the monies paid into and/or due and owing to the Pension Fund shall be vested in and remain exclusively in the Trustees of that Fund; outstanding and withheld contributions constitute Plan assets." (Dkt. 12-10 at 3).  Accordingly, Plaintiffs' well pleaded allegation, supported by documentary evidence, establishes that the unpaid contributions were plan assets.  *See Laborers' Int'l Union of N. Am., Loc. Union No. 91 v. Insulation Coatings & Consultants LLC*, No. 20-CV-1586 (JLS), 2023 WL 4060338, at *4 (W.D.N.Y. Apr. 3, 2023) (finding that plaintiffs established that benefit contributions were plan assets based on allegations in the complaint accepted as true and trust documents submitted as evidence).

"In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  ERISA identifies an individual as "a fiduciary with respect to a plan to the extent" the individual "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). "Congress intended ERISA's definition of fiduciary 'to be broadly construed[,]' and '[u]nlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional." *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997).  Accordingly, "'a person may be an ERISA fiduciary with

respect to certain matters but not others'; fiduciary status exists only 'to the extent' that the person 'has or exercises the described authority of responsibility' over a plan." *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014) (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987)).

Plaintiffs' argument that Defendant's fiduciary status arises "[b]y virtue of his role with Insulation Coatings" is flawed because Plaintiff must establish that Defendant exercised a level of control sufficient to deem him a fiduciary. (Dkt. 12 at 17). *See Int'l Bhd. of Elec. Workers Loc. 106 v. Marker Elec. Contracting, Inc.*, No. 16-CV-932-FPG, 2018 WL 4327815, at *5 n.4 (W.D.N.Y. Sept. 10, 2018) ("[T]he Second Circuit has made clear that 'an individual cannot be held liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager.'") (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 33 (2d Cir. 1994) and internal quotation marks omitted). Plaintiffs assert in a conclusory fashion that Defendant is responsible for the company's day-to-day operations and decisions regarding benefit contributions payments, including whether to pay them, but they offer no factual allegations or evidence to otherwise show that Defendant's claimed fiduciary status is based on his function, rather than his title. *See LoPresti*, 126 F.3d at 40; *Trs. of Bldg. Trades Educ. Benefit Fund v. Petry*, No. CV 20-4617 (RPK)(ARL), 2021 WL 7908053, at *6 (E.D.N.Y. Dec. 22, 2021) ("Court need not accept conclusory allegations of control, entirely unsupported by a factual basis[]" when considering whether an individual is a fiduciary) (citations omitted); *cf. Bricklayers & Allied Craftworkers*, 779 F.3d at 189

(affirming district court's holding that LLC's owner, officer, and shareholder was personally liable as an ERISA fiduciary based on factual allegations and evidence that owner decided which of the company's creditors to pay, controlled the money owed as benefits contributions, and failed to make contributions to the funds).  Plaintiffs cite to *Trustees of the Road Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-CV-0884 (RRM) (MDG), 2009 WL 3497493 (E.D.N.Y. Oct. 28, 2009), seemingly for the proposition that individuals breach their fiduciary duties when they use fund assets that they control for a purpose other than paying benefits contributions (*see* Dkt. 12 at 13), but that case is distinguishable.  In *Goldberg*, the plaintiffs alleged that the defendant was the president and principal shareholder of the corporation and that he used plan assets as assets of the corporation.  2009 WL 3497493, at *4.  Moreover, the defendant signed the CBA and "every remittance report submitted in this action."  *Id.*  Conversely, in the instant action, aside from citing Defendant's position at Insulation Coatings, Plaintiffs simply allege in a conclusory manner that Defendant "exercised his authority or control over vested Plan assets when he paid other expenses rather than contributions." (Dkt. 1 at ¶ 24).  These allegations are too thin, even with Defendant's default, to support a conclusion that Defendant exercised sufficient control over the funds at issue to make him personally liable as a fiduciary for Insulation Coatings' delinquent benefits contributions.  To meet the threshold for establishing personal liability, Plaintiffs must provide further support for the fact-intensive inquiry as to how Defendant controlled, handled, and/or used the specific funds at issue during the relevant time period.

Plaintiffs' argument that Defendant's signature on the payment agreement between Insulation Coatings and Plaintiffs binds him to repay delinquent benefits contributions also is insufficient.  "When determining whether an individual intended to be held personally liable for unpaid CBA contributions owed pursuant to ERISA obligations, the court looks to principles of state law." *Jacobson v. Citi-Wide Elec. Corp.*, No. 03-cv-263 (DLI)(SG), 2008 WL 4491374, at *2 (E.D.N.Y. Sept. 30, 2008) (citing *Lerner v. Amalgamated Clothing & Textile Workers Union,* 938 F.2d 2, 5 (2d Cir. 1991)).  "Under New York law, an agent who signs on behalf of a disclosed principal will not be individually bound unless 'there is clear and explicit evidence of the agent's intention to substitute or super add his personal liability for, or to, that of his principal.'"  *Id.*  Because "a finding of personal liability is 'rare[,]' there must be 'overwhelming evidence of the signatory's intention to assume personal liability.'"  *Sullivan v. Marble Unique Corp.*, No. 10 CV 3582(NGG)(LB), 2011 WL 5401987, at *8 (E.D.N.Y. Aug. 30, 2011) (quoting *Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.,* 301 F.3d 50, 53 (2d Cir. 2002)), *adopted*, 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011).  To ascertain the signatory's intent, courts consider "[t]he overall construction of the contract, the contract's length, the proximity of the liability provision to the signature line, and the presence of the signatory's name[.]" *Jacobson*, 2008 WL 4491374, at *3 (citing *Lollo*, 35 F.3d at 35).  Courts also consider the following factors:

> the specific construction of the liability provision and the signature line[;] . . . whether the personal liability provision is explicit and includes the signatory's name[;] whether the construction of the signature line suggests

> that the signatory signed for himself or on behalf of the corporation[;] and
> whether the contract follows "the nearly universal practice" of having the
> signatory sign twice, once as individual and once as corporate agent.

*Id.* (quoting *Mason Tenders*, 301 F.3d at 54 and citing *Lollo*, 35 F.3d at 35).  The nature of the contract negotiations before the document was signed and the signatory's corporate role are also relevant factors.  *Id.* (citation omitted).  "When these factors clearly weigh in favor of personal liability, courts do not hesitate to hold signatories personally liable." *Id.* (citing *Lollo*, 35 F.3d at 35).

In this circumstance, there is insufficient support for the conclusion that Defendant intended to assume personal liability for Insulation Coatings' delinquent benefit contributions when he signed the payment agreement.  (*See* Dkt. 12-6 at 2-3).  While the payment agreement is only two pages long, there is no explicit language stating that Defendant was assuming personal liability.  Rather, the agreement almost exclusively refers to the "COMPANY"—rather than an individual—when addressing responsibilities regarding repayment, the binding nature of the agreement on a successor corporation, and the implications of a failure to make payments pursuant to the agreement.  The document references unspecified "INDIVIDUALS" who agreed to its terms and states that "INDIVIDUALS will pay an initial payment of $10,000.00 on October 15, 2021, thus reducing the balanced owed . . . ."  (*Id.* at 2).  However, these individuals are not named, and the subsequent language about the repayment schedule after the initial payment only discusses the responsibilities of the company.  The lack of any additional references to requirements on individuals is notable and suggests a conscious decision by the parties not

to ascribe any additional personal liability beyond the initial payment of $10,000.00. Furthermore, the signature line of the payment agreement reflects that Defendant signed the document for Insulation Coatings in his capacity as owner. (*See id.* at 3). The payment agreement does not follow "the nearly universal practice" of having Defendant sign in both his individual and corporate capacities. As a result, the Court cannot conclude on this record that Defendant's signature on the payment agreement obligates him to individually repay Insulation Coatings' outstanding benefit contributions. *See Sullivan*, 2011 WL 5401987, at *10 (finding the evidence of signatory's intent to assume person liability to be "close," noting the "presumption against individual liability" in ERISA cases, and recommending that the district court not find individual liable based on his signature on a CBA and a memorandum extending the CBA) (quotations omitted); *see also Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Local Union No. 71 v. Lovejoy Metals, Inc.*, 495 F. Supp. 3d 174, 195-96 (W.D.N.Y. 2020) (refusing to find president of corporation personally liable for its unpaid benefit contributions on the basis that he was the corporation's signatory to a CBA with the union).

### III.   Plaintiffs Have Not Established the Amount of Benefit Contributions Due

Even if Plaintiffs satisfied the standard for a finding of liability, they have not established the amount due. "[A] defendant's default does not constitute admission of the plaintiff's allegations relating to the amount of damages[,]" and "the Court must conduct its own analysis to 'ascertain the amount of damages with reasonable certainty[.]'" *Id.* at 184 (quotations omitted). The Court previously found that Plaintiffs submitted insufficient

evidence to establish that Insulation Coatings owed $21,859.50 in delinquent benefits
contributions (*see* Dkt. 10 at 7)[1], and Plaintiffs have not cured this deficiency.  Plaintiffs
again cite to an affidavit from the administrative manager for the Rochester Laborers'
Local 435 Fringe Benefit Funds to assert that Insulation Coatings made payments totaling
$33,824.88 out of the $55,684.38 that was past due, based on the audit.  (*See* Dkt. 12 at 11;
*see also* Dkt. 12-7 at ¶ 4).  "The Second Circuit has allowed damages determinations . . .
where detailed affidavits and documentary evidence provide the court with a sufficient
basis for assessing damages." *Insulation Coatings*, 2023 WL 4060338, at *5 (finding that
plaintiffs' documentary evidence was insufficient to allow the court to assess damages)
(citation omitted).  Here, the affidavit that Plaintiffs submitted lacks details beyond
asserting that the audit balance is $21,859.50, and the documentary evidence is at odds
with the requested damages.  According to the payment agreement's monthly payments

---

[1]    The Court also found in its prior Decision and Order that the record was not
sufficient to allow the Court to conclude that Insulation Coatings was a signatory to the
CBA. (Dkt. 10 at 6).  In the second motion for default judgment, Plaintiffs included a
signature page that purportedly demonstrates that Insulation Coatings is a signatory to the
CBA. (Dkt. 12-3; *see also* Dkt. 12 at 10-11).  However, this document is a single page that
is unaffixed to the agreement to which it ostensibly binds its parties.  The Court notes that
the signature page is numbered page 39, but in the CBA that Plaintiffs submitted, page 39
contains different language.  (*See* Dkt. 12-2 at 43).  On this basis, the Court is not confident
that the agreement to which the signature page references contains the same terms as the
CBA under which Plaintiffs seek to hold Defendant liable.  However, the signed payment
agreement between Insulation Coatings and Plaintiffs references the CBA and Insulation
Coatings' obligations therein regarding benefit contributions.  (Dkt. 12-6).  Accordingly,
the Court finds that Insulation Coatings is bound by the terms of the CBA with regard to
the unpaid benefit contributions at issue in this action.  The Court need not and does not
make any findings as to whether Insulation Coatings is bound by sections of the CBA
outside the scope of this case.

schedule, the total remaining balance as of June 2022 was scheduled to be $23,297.64, and as of July 2022, the balance was scheduled to be $20,436.02.  (Dkt. 12-6 at 17).  Plaintiffs have offered no explanation for these differing monetary figures, and the Court is unable to discern any explanation, since Plaintiffs have not submitted any further evidence with respect to payments that have actually been submitted.  The discrepancy between these amounts and the amount that Plaintiffs assert is outstanding, coupled with the lack of evidence of Insulation Coatings' repayment history, leaves the Court unable to conclude with reasonable certainty the amount in unpaid benefits contributions to which Plaintiffs would be entitled if Defendant was found liable.[2]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a default judgment (Dkt. 12) is denied.  Should Plaintiffs choose to again move for a default judgment, Plaintiffs are reminded that they must address all deficiencies identified in the Court's Decisions and Orders.  The failure to do so may result in summary denial of any subsequent motion.

---

[2]     Plaintiffs also do not explain the basis for the time period specified in their allegation that they are entitled to repayment of "delinquent fringe benefit contributions and deductions for *months May-July 2022 and September 2022*[.]"  (Dkt. 12 at 11) (emphasis added).  This timeframe is not identified in the audit report documenting Insulation Coatings' failure to remit benefits contributions, and the only reference to these dates in the record is in a single sentence in the affidavit from the administrative manager for the Rochester Laborers' Local 435 Fringe Benefit Funds.  (*See* Dkt. 12-7 at ¶ 3).  Nevertheless, this lack of clarity is immaterial because Plaintiffs have established that the audit revealed a shortfall of $55,684.38 and that Insulation Coatings agreed to repay this amount in the payment agreement.  (*See* Dkt. 12-5; Dkt. 12-6).

Plaintiffs shall serve a copy of this Decision and Order on Defendant and shall file proof of service of the same.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      July 10, 2024
            Rochester, New York

- 15 -